### The STATE of Ohio, Appellee,

v.

### WAGNER, Appellant.

[Cite as *State v. Wagner* (1993), 88 Ohio App.3d 398.]

Court of Appeals of Ohio,
Ross County.

No. 92 CA 1916.

Decided June 25, 1993.

*William H. Allyn, Jr.,* Ross County Assistant Prosecuting Attorney, for appellee.

*Thomas M. Spetnagel,* for appellant.

STEPHENSON, Judge.

This is an appeal from a judgment of conviction entered by the Ross County Court of Common Pleas, upon a jury verdict, finding Richard H. Wagner, defendant below and appellant herein, guilty of two counts of aggravated trafficking in controlled substances in violation of R.C. 2925.03. Appellant assigns the following errors for our review:

I. "The trial court erred by overruling appellant's motion to dismiss on speedy trial grounds."

II. "The trial court erred by failing to give the proper instruction in its charge to the jury."

III. "The trial court erred by failing to grant appellant's motion for acquittal as to Count Three of the indictment."

The record reveals the following facts pertinent to this appeal. During the summer of 1991, Deputy David Mitchell of the Scioto County Sheriff's Department and Deputy Jeff McCarty of the Adams County Sheriff's Department were involved as undercover narcotics officers with the South–Central Ohio Task Force. The purpose of the task force was to pool resources from various law enforcement agencies scattered throughout several counties so as to investigate drug trafficking within their collective jurisdictions. This case is a product of that investigation and involves the purchase, or attempted purchase, of controlled substances by the aforementioned deputies. Appellant and Tim Clemmons also participated in these transactions although the extent of their respective roles as facilitators or intermediaries is contested.

The uncontroverted evidence is that on August 27, 1991, Deputy Mitchell purchased a "quarter rock" or "twenty-five dollar rock" of crack cocaine supplied by a Paris Thomas while undercover on the south end of Chillicothe, Ohio, in an area known as "the project." On September 25, 1991, both undercover deputies were at Anderson's Lounge on High Street in Chillicothe when Deputy McCarty expressed interest in purchasing a "fifty cent piece" or "rock" of crack cocaine. Deputy McCarty gave $50 to Deputy Mitchell, who then left the establishment with appellant and Clemmons to make the purchase. Deputy Mitchell later returned with the controlled substance and gave it to Deputy McCarty. There was also a discussion between the parties concerning the availability of lysergic acid diethylamide ("LSD"). Deputy Mitchell initially gave appellant $100 to acquire "forty hits" of LSD on his behalf. Appellant failed to return the narcotics to Deputy Mitchell. Later, appellant was given an additional $40 to complete the sale but still failed to return with the drugs. It was later revealed that Deputy Mitchell had been intentionally "ripped off."

On or about November 1, 1991, the Ross County Grand Jury returned a three-count indictment against appellant charging him with trafficking in controlled substances, in violation of R.C. 2925.03, as a result of the drug transactions involving Deputies Mitchell and McCarty. The matter came on for trial on August 3, 1992. The jury found appellant guilty of the two trafficking counts concerning the purchase of crack cocaine, and attempted purchase of LSD, which occurred the previous September 25. However, there was a "hung jury" with respect to the count involving the initial purchase of crack cocaine by Deputy Mitchell. Appellant was sentenced to concurrent terms of two to fifteen years on the count involving the crack cocaine and seven years' actual incarceration to twenty-five years on the count involving LSD. A judgment entry to that effect was filed on September 3, 1992, and this appeal followed.

Appellant's first assignment of error raises the issue of whether the proceedings below were conducted within the time frame specified by Ohio's "speedy trial" statute. The law provides that a person against whom a felony charge is pending must be brought to trial within two hundred seventy days after his arrest. R.C. 2945.71(C)(2). In computing this time, each day the accused is held in jail, in lieu of bail on the pending charge, is counted as three days. R.C. 2945.71(E). The record in the cause *sub judice* indicates that the arrest warrant was served on November 6, 1991, and that a trial was initially scheduled for January 6, 1992. It is undisputed that appellant remained incarcerated during this period. Although the state and appellant advance differing computations of time for that interval, it is clear that the two-hundred-seventy-day period had not yet run.

On December 20, 1991, appellant filed a motion for continuance so that an independent chemical analysis could be conducted on the controlled substances seized as evidence. The matter was then continued by the lower court until April 21, 1992.[1] This action by appellant extended the time limit in which he was to be brought to trial. See R.C. 2945.72(H). It follows then that the period of time between the two trial dates does not factor into our computation of the two-hundred-seventy-day time limit.

On April 15, 1992, one week before the rescheduled trial, the Ohio Public Defender moved for leave to withdraw as counsel for appellant on the grounds that his office also represented the aforementioned Clemmons and that this created a conflict of interest. The trial court granted such leave and then appointed new counsel. On April 16, 1992, the lower court *sua sponte* continued the trial to August 3, 1992. There was no reason for this continuance specified in the court's journal entry.[2]

The pivotal issue in this case is whether the period of time between the April and August trial dates should be included in our computation of the two-hundred-seventy-day "speedy trial" time limit. The lower court's continuance extended the trial date by more than one hundred days. This number would exceed three hundred days once the aforementioned triple count mechanism was factored in as a result of appellant's incarceration. See R.C. 2945.71(E). Thus, if the time were included, the statutory limit for speedy trials would clearly have

---

1. The trial was originally postponed until April 22, 1992. However, a subsequent order rescheduled the trial for April 21, 1992.

2. On July 29, 1992, appellant filed a motion to dismiss the indictment on grounds that his "statutory rights to a speedy trial had been violated." Although there is no further journal entry expressly disposing of the motion, we note from the transcript that it was overruled from the bench just prior to commencement of trial.

been violated. Appellant has argued that this time must be so included and, for the following reasons, we agree.

The Ohio Supreme Court has held that, when *sua sponte* granting a continuance, "the trial court must enter the order of continuance *and the reasons therefor* by journal entry prior to the expiration of the time limit * * * for bringing a defendant to trial." (Emphasis added.) *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, syllabus. The courts of appeals in the state have given further expression to this principle by requiring that the journalized continuance identify the party to whom it is chargeable as well as indicate the reasons justifying the continuance. See, generally, *State v. Collura* (1991), 72 Ohio App.3d 364, 368, 594 N.E.2d 975, 977; *State v. Benson* (1985), 29 Ohio App.3d 321, 323, 29 OBR 448, 450, 505 N.E.2d 987, 990; *State v. Geraldo* (1983), 13 Ohio App.3d 27, 31, 13 OBR 29, 33, 468 N.E.2d 328, 332; *State v. Broerman* (Feb. 18, 1983), Lucas App. No. L–82–284, unreported, 1983 WL 13845. A continuance which does not satisfy these requirements must be counted against the state. *Geraldo, supra,* 13 Ohio App.3d at 31, 13 OBR at 33, 468 N.E.2d at 332. The lower court's journal entry in this case fails to indicate any reason justifying the *sua sponte* continuance and makes no identification of a party to whom it is chargeable. Accordingly, the additional time engendered by this continuance must be counted against the state.

The prosecution counter-argues that this second continuance was for the "obvious" purpose of allowing appellant sufficient time to put together "a proper defense." That may well have been the case. The public defender was allowed to withdraw, and new counsel was appointed, less than a week before trial. It would have been difficult for an attorney to put together a defense theory in that period of time. Moreover, at the hearing on appellant's motion to dismiss, the trial court gave its own justification of the continuance as follows:

"I can * * * by independent recollection state that I picked up the telephone as soon as I saw the motion [by old counsel for leave to withdraw] and I called [new counsel] and I asked if he wouldn't accept an appointment to represent [appellant]. [New counsel] indicated that he would be kind enough to accommodate the court in that respect and I believe offered the information that he had had prior dealings with [appellant], that he was comfortable with representing [him] and that he would approach [appellant] on the subject immediately and on the sixteenth of April we journalized an order appointing [new counsel] and at that time re-scheduled the trial for this date August the third. We're bound to note that there are lengthy periods of time between the original setting and the second setting, between the second setting and this setting, but, we feel strongly that both continuances were required for the proper defense of the defendant and our docket has been crowded to the point that we simply could not displace other

criminal cases, many other criminal cases set for trial, in order to accommodate this [individual]. We feel that the waiver that the speedy trial provisions constitutionally have clearly been met and notwithstanding the fact that [appellant's] been in the Ross County Jail in lieu of bail all this time, we feel that statutory speedy trial limits have been * * * observed because we feel that * * * time stopped running or ceased to run for certain periods at the request of the [appellant]."

It is very probable that the continuance was granted so that new counsel would have additional time to prepare a defense. Nevertheless, there are several problems with this argument which, ultimately, prevent us from charging the continuance against appellant. First, and foremost, this rationale was not carried into the court's journal entry as required by the aforementioned case law. It goes without saying that a court speaks *only* through its journal entry and not by oral pronouncement. *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 173, 23 OBR 336, 338, 492 N.E.2d 146, 148, fn. 3; *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus. Additionally, there is nothing in the record to indicate that appellant even sought a continuance. The original papers contain no written motion to that effect and, in the trial court's statement set forth previously, there is no express mention that appellant ever verbally requested a continuance when new counsel was appointed. Although unlikely, it is not beyond the realm of possibility that counsel was prepared, and appellant was ready, to proceed with a defense at the April trial. We are also highly reluctant to rely on a justification that is pronounced nearly four months after the continuance is journalized rather than contemporaneously therewith.

The state contends that this court has previously allowed nonjournalized continuances to withstand speedy trial analysis and cites our decision in *State v. Stitt* (Mar. 7, 1990), Ross App. No. 1605, unreported, 1990 WL 34326, for the proposition that "if it can be gleaned from the record why the continuance was allowed, then it is not a *sua sponte* continuance." However, the state has misinterpreted our ruling in that case. The factual posture of *Stitt* involved an oral motion for a continuance made during an arraignment. As mentioned previously, there is no indication in this case that appellant ever made a motion for, or requested, a continuance beyond the April trial date. *Stitt* is clearly distinguishable from the cause *sub judice*.

■ For these reasons, the additional delay brought about by the *sua sponte* continuance must be included in calculating the two-hundred-seventy-day "speedy trial" time limit of R.C. 2945.71(C)(2). Our ruling on this issue should not be misconstrued as a condemnation of the lower court's action in granting such a continuance. This is generally a discretionary matter, see *State v. Claytor* (1991),

61 Ohio St.3d 234, 241, 574 N.E.2d 472, 478; *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078, syllabus, and trial courts should be commended for protecting criminal defendants from being stampeded into trial without time to prepare an adequate defense. However, the record must be carefully documented and preserved as to the reasons justifying that action. There was nothing of record to explain the *sua sponte* continuance in this case and, therefore, the operation of the "speedy trial" statute was not tolled.

As discussed at the outset of this decision, the inclusion of this time caused appellant's pretrial incarceration to run afoul of the two-hundred-seventy-day time limit specified in R.C. 2945.71(C)(2). Appellant's first assignment of error is sustained and the remaining assignments of error are now disregarded as moot pursuant to App.R. 12(A)(1)(c). The judgment of the trial court is reversed and the case is hereby remanded for discharge pursuant to R.C. 2945.73.

*Judgment reversed.*

GREY, J., concurs.

HARSHA, P.J., dissents.

HARSHA, Presiding Judge, dissenting.

Because I do not believe the delay in bringing defendant to trial in this case is a *sua sponte* continuance within the meaning of *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, I respectfully dissent. More appropriately, the delay in this case falls within the extension provided for by R.C. 2945.72(C) as being "any period of delay necessitated by the accused's lack of counsel * * *." The period of delay in this case was clearly necessitated by the accused's lack of counsel as a result of defense counsel's motion to withdraw due to a conflict of interest. If the trial court had granted the motion to withdraw and continued the trial in one entry, rather than two, there would be little room for disagreement in characterizing the nature of this continuance. I do not believe the interest of justice requires discharge of the appellant where the trial court used two separate entries, rather than one, to satisfy a request by defense counsel that new counsel be provided. While appellant's current counsel is quick to note that there is no evidence in the record that he requested a continuance, one can only imagine the screams of anguish which would have arisen had he been forced to go to trial with short notice.