OPINION
A jury found defendant Sonya Jackson guilty of one count of aggravated murder. In this appeal she claims (1) the weight of the evidence showed she acted in self-defense, (2) the evidence did not establish that she acted with prior calculation and design, and (3) counsel performed ineffectively on several points.
The state's evidence showed that defendant and the victim lived together with the victim's two children. Defendant admitted to being a crack cocaine and alcohol abuser, and the victim expressed his dislike for those habits. On the day of the murder, the victim came home and found defendant high from crack and malt liquor. They began arguing and the victim told defendant that he was taking the children and leaving her. In a statement made to the police after her arrest, defendant said she told the victim that if he left her, she would kill him.
The two children came home with a cousin, but defendant offered them candy on the condition that they go outside while defendant and the victim argued. The children played outside and heard the two arguing inside. When they reentered the house, they saw both defendant and the victim on the floor "tussling." Defendant had a knife in her hand. Defendant approached the victim's son and forced him against the wall and placed the knife to his chest. The victim pushed defendant away, so she then cornered the victim's daughter and held her at knife-point. The victim again pushed defendant away, this time knocking her down so that her head struck a table top as she fell.
The victim took the three children and led them outside to his car. On the way out, the daughter and her cousin asked defendant if she "was cool." Defendant replied that she was, but then charged after the victim and tried to stab him with the knife. The victim, now standing with his children by his car, picked up a pipe and swung it at her, knocking the knife from her hands. Defendant picked up the knife and rushed toward the victim, whose attention had been turned to his children. Defendant stabbed the victim in the heart, killing him. As she rushed back into the house, defendant told the victim's daughter, "didn't I tell you I was going to kill you father." When the police arrived, defendant told one of the officers, "I stabbed him, take me to jail."
At the time the killing occurred, two persons were sitting in a car parked close to the victim's car. One of the occupants corroborated the previous testimony. She said she saw a man with three children in tow, rushing them to a car. She then saw defendant come running out of the house with a knife in her hand. Defendant took a swipe at the victim with the knife. The victim picked up a pipe and swung it at defendant, knocking the knife away. Defendant picked up the knife and stabbed the victim in the chest. The witness said that when stabbed, the victim had turned his attention to his children and did not see defendant coming at him with the knife.
Defendant testified and claimed she attacked in self-defense. She agreed that she and the victim argued and that she picked up a steak knife, but denied that the children were present in the apartment, although she allowed that her recollection might not be firm because of the drugs and alcohol in her. She said the victim left the house and went to his car and she followed him into the street. The victim retrieved a pipe from his car while she pleaded with him not to leave her. She said the next thing she knew, the victim struck her with the pole and she somehow stabbed him.
 I
The first assignment of error complains that the verdict is against the manifest weight of the evidence because defendant proved by a preponderance of the evidence that she acted in self-defense. She claims the evidence against her was vague, conflicting and fragmented.
"On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. An argument challenging a conviction on the weight of the evidence, rather than the sufficiency of the evidence, addresses "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Tompkins
(1997), 78 Ohio St.3d 380, 386, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
In order to establish self-defense, the defendant must show (1) that he was not at fault in creating the situation giving rise to the affray; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) that he did not violate any duty to retreat or avoid the danger.State v. Willifford (1990), 49 Ohio St.3d 247, 249.
The evidence reasonably showed that the initial altercation between defendant and the victim did not go past the point of mere shoving. In fact, defendant admitted that neither one of them were hurt. Defendant escalated the altercation by picking up a knife and holding two children at knifepoint. When the victim pushed her off the children and tried to flee the house with them, defendant followed with her knife and tried to stab the victim. Under these circumstances, it cannot be said that defendant was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of force. She could easily have stayed away from the victim as he tried to flee with his children. The jury did not lose its way. The first assignment of error is overruled.
 II
In her second assignment of error, defendant complains that the state failed to present sufficient evidence to show she acted with prior calculation and design, a required element of aggravated murder.
Aggravated murder is defined in R.C. 2903.01(A) as "no person shall purposely, and with prior calculation and design, cause the death of another * * *." The term "prior calculation and design" is not defined by the Revised Code, but it is generally understood to encompass the calculated decision to kill. State v. Robbins
(1979), 58 Ohio St.2d 74, paragraph one of the syllabus. The Committee Comment to R.C. 2903.01 says the section "restates the former crime of premeditated murder so as to embody the classic concept of the planned, cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary. See, also State v. Cotton (1979), 56 Ohio St.2d 8, paragraph two of the syllabus. But neither the amount of care nor the length of time the offender takes to ponder the act are critical factors in themselves in determining prior calculation and design. State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 196; State v. O'Neal (Sept. 22, 1994), Cuyahoga App. No. 65260, unreported at 14, citing Legislative Service Commission Comment to R.C. 2903.01.
The Supreme Court has recognized it is impossible to formulate a bright-line test which can readily distinguish the presence of prior calculation and design from its absence — each case must turn on the specific facts and evidence introduced during the trial.State v. Taylor (1997), 78 Ohio St.3d 15, 20. In State v. Cotton
(1978), 56 Ohio St.2d 8, paragraph three of the syllabus states:
 Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified.
See, also, State v. Claytor (1991), 61 Ohio St.3d 234; Statev. Robbins (1979), 58 Ohio St.2d 74.
The facts, taken in a light most favorable to the state, amply show sufficient evidence of prior calculation and design. Defendant became angry when the victim told her he was leaving her and told him she would kill him. She armed herself during the "tussle" and threatened the victim's two children, even though they had no quarrel with defendant. When the victim momentarily disarmed defendant, he tried to flee the premises with his children, but defendant followed. Two of the children spoke with defendant as she left the house and said that defendant told them she had calmed down. Despite this statement to the children, she walked over one hundred feet to where the victim stood and tried to stab him. Even after being momentarily disarmed, she retrieved the knife and made the second fatal attack. As she walked back to the house, she told the victim's daughter, "didn't I tell you I was going to kill you father."
Defendant had ample time to make a calculated decision to kill the victim. This was clearly not a case of instantaneous deliberation. The second assignment of error is overruled.
 III
The third assignment of error raises several claims of ineffective assistance of counsel.
To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance fell below the objective standard of reasonable competence under the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Mills (1992),62 Ohio St.3d 357, 370.
 A
Defendant first claims that counsel should have filed a motion to suppress the contents of the statement she made to the police — we assume she refers to the part where she admitted telling the victim she would kill him if he left her. She claims that she lacked counsel at the time.
It is true that defendant lacked counsel at the time she made her statements, but the police carefully advised defendant of her rights in that regard, and she voluntarily and knowingly waived those rights as evidenced by her signature on the written statement. We see no basis for a colorable motion to suppression on these grounds, so counsel did not perform deficiently. See Statev. Gibson (1980), 69 Ohio App.2d 91, 95.
 B
Defendant next claims that counsel should have presented a defense based upon voluntary intoxication as being an impediment to a specific intent to kill. Although defendant testified that she smoked crack and drank malt liquor on the day of the murder, toxicology reports showed her blood alcohol within the legal limits at .076. Moreover, by her own admission, defendant claimed that the effects of crack cocaine on her lasted for "about three minutes."
An instruction on voluntary intoxication may be appropriate when "properly raised by the evidence." State v. Fox (1981),68 Ohio St.2d 53, 56. The evidence here did not suggest that defendant was so intoxicated so as to have lacked the specific intent to murder, so a request for such an instruction would surely have been denied.
 C
Defendant also claims counsel should have requested an instruction on voluntary intoxication to determine whether she lacked the capacity to form the specific intent to kill. We overrule this portion of this assignment of error on the grounds previously stated, but add that "defense counsel need not make fruitless requests for jury instructions, such as those on intoxication." See State v. Hill (1995), 73 Ohio St.3d 433, 443.
 D
As her third ground for ineffective assistance of counsel, defendant claims counsel should have obtained police records to show prior reports of domestic violence committed by the victim against defendant. She claims this evidence would have helped establish her frame of mind at the time of the murder.
Defendant does not point to any portion of the record to suggest that the victim had committed acts of domestic violence against her, so we necessarily cannot review this issue on appeal.State v. Cooperrider (1983), 4 Ohio St.3d 226, 228.
We note, however, that even if such evidence did exist, the facts do not give any basis for a self-defense claim given defendant's pursuit of the victim while he tried to flee the premises with his children.
 E
Defendant claims that counsel should have presented an expert to bolster battered woman's syndrome defense, particularly in light of counsel's statements during opening argument to the jury that defendant had been abused "over and over again."
Battered woman syndrome is not itself an affirmative defense, but exists to show the defendant acted in honest belief that she was in imminent danger of death or great bodily harm. See State v.Koss (1990), 49 Ohio St.3d 213, 217. In State v. Sallie (1998),81 Ohio St.3d 673, 675, the supreme court explained that:
 Expert testimony explaining battered woman syndrome, and opining that the defendant suffered from the syndrome, may be admitted to establish the requisite mental state in proving self-defense. R.C. 2901.06. Ohio has adopted a subjective test to determine whether a defendant properly acted in self-defense. If the defendant honestly believes that death or great bodily harm is imminent and that the only means of escape from such danger is in the use of deadly force, then the defendant has acted in self-defense. Koss, 49 Ohio St.3d at 215, 551 N.E.2d at 973.
An expert may have contributed something to defendant's claims of self-defense, but we cannot say that counsel's decision not to establish battered woman's syndrome constituted a violation of an essential duty. Defendant's argument presumes that she would have established she suffered from the syndrome, but even had the syndrome been established, we do not believe it would have persuaded a rational trier of fact that she acted in self-defense under the circumstances presented in this case. Defendant failed to establish the requisite elements of a self-defense claim, primarily because she could not show that she reasonably believed herself to be in imminent fear of great bodily harm. As the person holding the knife, defendant became the aggressor, particularly since she threatened to kill the victim if he left her. The persons who should have feared for their lives were the victim and his two children, each of whom had been threatened with a knife. Under these circumstances, it would have been difficult to tie battered woman's syndrome to defendant's subjective fears of imminent bodily harm. Counsel would have been acting reasonably in deciding to forego such testimony.
 F
Defendant claims counsel should have requested an instruction that she had no duty to retreat from her home. The request would have been futile, for even if defendant could establish her right to the premises, she nonetheless had to establish an imminent danger of bodily harm, and we have found that danger did not exist. The court has no duty to give jury instructions that are neither supported by the facts nor that assist the jury. State v. Guster
(1981), 66 Ohio St.2d 266, syllabus.
 G
Finally, defendant claims counsel should have requested that the jurors be polled following their verdicts and should have asked the court to modify the verdict on a lesser degree offense under Crim.R. 33(A)(4).
Crim.R. 31(D) states that when a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the court's own motion. The rule anticipates that while each juror's vote in the jury room forms the basis of the announced verdict, "a juror may dissent from the announced verdict when polled." State v. Sneed (1992), 63 Ohio St.3d 3, 22, fn.5.
Defendant's basis for requesting a poll of the jurors was a question the jury sent to the court during deliberations in which it asked the court whether prior calculation and design could be interpreted to mean only that defendant had the intent to harm the victim, not just kill him. She now claims that despite a unanimous verdict, some jurors, when polled, might have voiced an objection to the verdict. We see no reasonable probability that such would have been the case. The jury was presented with two possible lesser included offenses: murder and voluntary manslaughter. Had some members of the jury elected not to find defendant guilty of aggravated murder, it seems likely the jurors would have split on the verdict. On this record, it simply cannot be maintained that a poll of the jurors would have unquestionably altered the outcome of trial.
Defendant also argues the court should have had the opportunity to modify the conviction pursuant to Crim.R. 33(A)(4), which permits the court to modify the verdict to a lesser degree offense. Defendant claims the court initially voiced some trepidation at the close of the state's case as to whether the state proved prior calculation and design, and a timely post-trial motion under Crim.R. 33(A)(4) would have given the court the opportunity to modify the verdict to a lesser degree offense.
The court's remark during defendant's Crim.R. 29(A) motion for judgment of acquittal that it had some "trepidation" about the element of prior calculation and design cannot be seen as possible grounds for vacating the jury's verdict. A motion for judgment of acquittal at the close of the state's case merely tests the sufficiency of the evidence at that point in the proceedings — whether reasonable minds could disagree over that element. SeeState v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. Obviously, the jury found the state sufficiently proved prior calculation and design, so the court would not likely have overturned that verdict based upon a statement that prior calculation and design might have been a close call in the court's mind. The third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and JAMES M. PORTER, J., concur.