[Cite as *In re Application of Am. Transm. Sys., Inc.*, 125 Ohio St.3d 333, 2010-Ohio-1841.]

IN RE APPLICATION OF AMERICAN TRANSMISSION SYSTEMS, INC., ET AL;
CITIZENS ADVOCATING RESPONSIBLE ENERGY, APPELLANT; OHIO POWER
SITING BOARD ET AL., APPELLEES.

[Cite as *In re Application of Am. Transm. Sys., Inc.*,
125 Ohio St.3d 333, 2010-Ohio-1841.]

*Power Siting Board — Challenged order not unlawful or unreasonable — Delegation of duties to administrative law judge statutorily authorized — Board did not abuse its discretion in conducting the hearing — Order affirmed.*

(No. 2009-0481 — Submitted January 26, 2010 — Decided May 4, 2010.)

APPEAL from the Power Siting Board, No. 07-171-EL-BTX.

_____

**O'DONNELL, J.**

## Introduction

{¶ 1} Citizens Advocating Responsible Energy ("CARE"), a group of landowners in and around Geauga County, appeal as of right from an order of the Ohio Power Siting Board that authorized construction of an electric transmission line across their properties.

{¶ 2} CARE contends that two procedural errors invalidate the order: first, that the board delegated its decision-making authority to an administrative law judge ("ALJ") in violation of R.C. 4906.02(C) and, second, that the board improperly sealed parts of the record, unreasonably granted only a two-week continuance when CARE had requested a four-week continuance, and ultimately denied CARE a fair opportunity to prepare for the hearing.

{¶ 3} In response, the Power Siting Board asserts that it—not the ALJ—made the decision to approve the new line, and it maintains that it correctly sealed

some of the information in the record and that it gave CARE sufficient time to prepare for the hearing. The applicants, American Transmission Systems, Inc., and the Cleveland Electric Illuminating Company (collectively, "American Transmission"), have intervened as appellees and defend the board's order on similar grounds.

{¶ 4} CARE's arguments are not well taken. The order on its face demonstrates that the board issued it, and the record does not show that the board denied CARE a fair opportunity to prepare for the hearing. Accordingly, we affirm the order of the Power Siting Board.

## Background

{¶ 5} In order to meet Geauga County's growing demand for electricity, American Transmission planned to build a new substation. A substation is a point on the power grid where electricity, having been stepped up in voltage for more efficient, long-distance transmission, is stepped down for distribution on smaller lines. The needed substation would require a new transmission line, which in turn required a new right-of-way.

{¶ 6} To find a new right-of-way, American Transmission commissioned URS Corporation to perform a route-selection study. URS identified hundreds of possible routes, documented dozens of characteristics on each route, and assigned scores to each characteristic—the more onerous or expensive the condition, the more points assigned. URS then examined more closely the routes with the lowest and thus best scores.

{¶ 7} Using this study, American Transmission settled on two potential routes. One traveled primarily along a rural road and had a greater "land use" impact, which would have required taking several homes within the right-of-way. The other route (ultimately preferred by the company and approved by the board) traveled primarily across open country. It did not require the taking of any homes but had greater ecological impact.

**{¶ 8}** In February 2007, American Transmission filed a notice with the board of its proposal to construct a new line to serve the new substation, as well as a public notice explaining the two routes under consideration. It then held a public informational meeting on March 5, where affected landowners voiced their concerns regarding each route.

**{¶ 9}** On September 28, 2007, American Transmission filed its 1,300-page application proposing the cross-country route as the preferred route and the rural-road route as the alternate. In September and November, before any other parties had intervened, the company sought protective, trade-secret status for certain information, including a study that described power flows across its network.

**{¶ 10}** On January 15, 2008, CARE filed its motion to intervene.

**{¶ 11}** An ALJ conducted proceedings on behalf of the Power Siting Board. On March 3, 2008, the ALJ granted CARE's motion to intervene and American Transmission's motion for a protective order. CARE did not challenge the decision to seal parts of the record at that time.

**{¶ 12}** Discovery proceeded, and CARE eventually sought information subject to the protective order. American Transmission declined to provide the information until it reached a protective agreement with CARE, which took almost 14 weeks. Due to this delay, on August 7, 2008, CARE filed a motion to continue the September 2 hearing for at least four weeks, arguing that "it [was] not logistically possible * * * to be ready for the adjudicatory hearing by September 2, 2008."

**{¶ 13}** One week later, on August 14, the ALJ continued the hearing until September 16 – that is, for two weeks and not the four weeks requested by CARE. CARE did not object to this ruling before the hearing. Though it could have, it did not seek reconsideration, ask for interlocutory review by the board, or file another motion for continuance.

**{¶ 14}** On September 12 – less than a week before the hearing, more than six months after the ALJ granted the protective order, and after it had the sealed information—CARE, for the first time, challenged the decision to seal parts of the record. Significantly, its motion "to unseal" did not request more time to prepare.

**{¶ 15}** On September 16, the first day of the hearing, the ALJ denied CARE's motion to unseal, as well as two unrelated motions to strike. The ALJ then asked, "Are there any other matters, procedural matters, before we start the testimony?" CARE's counsel did not then object that the board had given CARE an inadequate opportunity to prepare. Indeed, CARE's counsel said nothing. During oral argument, counsel stated that CARE had objected to the two-week continuance "at the commencement of the hearing," but the record contradicts this assertion.

**{¶ 16}** On November 24, 2008, the board issued its opinion and order authorizing the preferred, cross-country route (with 43 additional conditions proposed by the board's staff). CARE timely applied for rehearing, which the board denied on January 26, 2009. The present appeal as of right ensued. R.C. 4903.13.

## Standard of Review

**{¶ 17}** "Pursuant to R.C. 4906.12, this court must apply the same standard of review to Power Siting [Board] determinations as we apply to orders by the Public Utilities Commission." *Chester Twp. v. Power Siting Comm.* (1977), 49 Ohio St.2d 231, 238, 3 O.O.3d 367, 361 N.E.2d 436. R.C. 4903.13 applies to board proceedings pursuant to R.C. 4906.12 and provides that an order "shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. Regarding procedural matters, the board "has the discretion to decide how * * * it may best proceed to manage and expedite the orderly flow of

its business, avoid undue delay and eliminate unnecessary duplication of effort." *Toledo Coalition for Safe Energy v. Pub. Util. Comm.* (1982), 69 Ohio St.2d 559, 560, 23 O.O.3d 474, 433 N.E.2d 212; compare R.C. 4901.13 (authorizing the commission to adopt "rules to govern its proceedings") with R.C. 4906.03(C) (authorizing the board to adopt "rules [that] are necessary and convenient to implement this chapter").

### The Delegation Issue

{¶ 18} In its first proposition of law, CARE contends that the board "delegate[d] its statutory duties to [the ALJ] and fail[ed] to make an independent determination that a certificate of environmental compatibility and public need should be issued." In support, it asserts that an ALJ drafted the order, that the entry on rehearing admitted unlawful delegation, and that the order failed to evaluate certain evidence.

{¶ 19} The board and the company respond that the board—not the ALJ—made the decision in this case. Moreover, they argue, the Revised Code permits an ALJ to perform such tasks as presiding over a hearing, considering evidence, and drafting a proposed order.

{¶ 20} R.C. Chapter 4906, the board's enabling statute, expressly allows the board to delegate many responsibilities to subordinates. R.C. 4906.02(A) states, "All hearings, studies, and consideration of applications for certificates shall be conducted by the board *or representatives of its members*." (Emphasis added.) More generally, R.C. 4906.02(C) states, "The chairman of the public utilities commission may assign or transfer duties among the commission's staff." See also R.C. 4906.02(D) ("The chairman may call to his assistance * * * any employee [of various agencies] for the purpose of making studies, conducting hearings, investigating applications, or preparing any report required or authorized under this chapter").

**{¶ 21}** One responsibility, however, cannot be delegated: "the board's authority to grant certificates under section 4906.10 of the Revised Code shall not be exercised by any officer, employee, or body other than the board itself." R.C. 4906.02(C).

**{¶ 22}** The order, on its face, shows that the board made that decision in this case. Members of the board signed the order granting the certificate. The order states, "The Ohio Power Siting Board * * * hereby issues its Opinion, Order and Certificate * * *," and concludes by stating, "[T]he Board approves the application and hereby issues a certificate * * *." On appeal, the board maintains that "the Board itself, not the ALJ, * * * issued the certificate * * *."

**{¶ 23}** Moreover, in reviewing CARE's claim, we presume procedural regularity. As we have long held, "in the absence of evidence to the contrary, public officers, administrative officers and public boards * * * will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner." *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O 465, 113 N.E.2d 14. To overcome the order's facial validity and presumed regularity, CARE cannot rely on bare allegations but must adduce evidence that unlawful delegation occurred.

**{¶ 24}** Although CARE asserts that it has such evidence, we disagree. For example, CARE relies on the fact that an ALJ drafted the order. But drafting and deciding are not the same, and the Revised Code does not prohibit the board from delegating such tasks as drafting a proposed order. See R.C. 4906.02(A) (authorizing "representatives" of the board to "hear[], stud[y], and consider[]" certificate applications); see also 4906.02(C) (authorizing chairman to "assign or transfer duties among staff").

**{¶ 25}** We reject CARE's argument, made in this vein, that the ALJ violated Ohio Adm.Code 4906-7-16(A), which requires the filing of "a written report" of the ALJ's "findings, conclusions, and recommendations." The rule

6

requires an ALJ report only "[i]f ordered by the board," id., and CARE has not shown that the board ordered a report. Nor could CARE show prejudice; the rehearing process provided CARE an opportunity to present the same objections to the same board members who would have considered objections to the ALJ report.

{¶ 26} CARE further contends that the following statement in the entry on rehearing "must be taken as an admission" that the ALJ made the decision below: "Just because a proposed order is prepared by an ALJ does not mean it is not read and closely considered by each Board member, prior to the Board meeting at which action is to be taken." CARE calls this statement its "best evidence" of unlawful delegation; however, such characterization is faulty, as the statement plainly implies that the board members "read and closely considered" the proposed order.

{¶ 27} Finally, CARE asserts that the order's "fail[ure] to evaluate unrebutted evidence" shows that unlawful delegation occurred.[1] Assuming the truth of the premise, the conclusion does not follow—numerous factors besides unlawful delegation could explain any analytical failings in the order.

{¶ 28} For these reasons, we reject CARE's first proposition of law and hold that the board did not violate R.C. 4906.02(C) by delegating its decisional authority.

### Adequacy of CARE's Opportunity to Prepare

{¶ 29} In its second proposition of law, CARE asserts that the board incorrectly sealed parts of the record and "thereby denied an opportunity to

---

1. CARE does not argue that the alleged failure to evaluate unrebutted evidence *itself* demands reversal. For example, a failure to evaluate evidence would arguably violate R.C. 4903.09, which requires the board to "set[ ] forth the reasons prompting the decisions arrived at," id., and prohibits "summary rulings and conclusions" that do not "develop[] the supporting rationale or record," *MCI Telecom. Corp. v. Pub. Util. Comm.* (1987), 32 Ohio St.3d 306, 312, 513 N.E.2d 337; see also R.C. 4906.11. But CARE did not raise this issue, so we do not reach it.

prepare fully and adequately for the hearing." The ALJ's two-week continuance, CARE contends, did not give it enough time to prepare.

{¶ 30} In response, the board and the company argue that the board correctly sealed the information and that CARE must file a mandamus action to challenge the sealing of allegedly public records. They also assert that CARE suffered no prejudice because it had access to the sealed information. Moreover, they say, the ALJ gave CARE enough time.

{¶ 31} Although the parties devote much of their briefs to the board's decision to seal, we need not review that decision. CARE complains that the board, by sealing parts of the record, reduced the amount of time CARE had to prepare. However, when CARE first objected to the sealing of the information— six months after the protective order had been issued and four days before the hearing—it had the sealed information *in hand* and did *not* seek a continuance. CARE asked the board for a continuance only once, on August 7 in its motion to continue the hearing. Consequently, we limit our review to the decision to continue the hearing for two weeks instead of the four weeks requested by CARE. See, e.g., *Parma v. Pub. Util. Comm.* (1999), 86 Ohio St.3d 144, 148, 712 N.E.2d 724 ("we do not accept * * * objections" when appellant has "deprived the commission of an opportunity to redress any injury or prejudice that may have occurred").

{¶ 32} "Orders granting or refusing [a] continuance * * * generally rest in the sound discretion of the commission," and this tenet holds true for the board. *Akron v. Pub. Util. Comm.* (1966), 5 Ohio St.2d 237, 241, 34 O.O.2d 467, 215 N.E.2d 366; see *Chester Twp.*, 49 Ohio St.2d at 238, 3 O.O.3d 367, 361 N.E.2d 436. As stated in other contexts, we consider " ' "the reasons presented * * * at the time the request [for continuance] is denied," ' " *State v. Beuke* (1988), 38 Ohio St.3d 29, 36, 526 N.E.2d 274, quoting *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078, quoting *Ungar v. Sarafite* (1964), 376

U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921, and will not reverse for the denial of a continuance if "no showing" is made "of what evidence could have been produced that was omitted," *State v. Claytor* (1991), 61 Ohio St.3d 234, 241, 574 N.E.2d 472.

{¶ 33} CARE has not shown that the ALJ abused its discretion by granting only a two-week continuance. Looking to the reasons presented to the ALJ, see *Beuke*, 38 Ohio St.3d at 36, 526 N.E.2d 274, we note that CARE offered only general reasons for its requested continuance. Although CARE asserted that American Transmission had unreasonably delayed production of certain materials, it did not explain in any detail why four weeks represented the minimum reasonable continuance. Other parties opposed CARE's request. Weighing the various interests, we conclude that the ALJ acted within its discretion in granting a two-week continuance.

{¶ 34} CARE has not shown prejudice from the exercise of discretion in this case. CARE fails to specify what evidence or argument "could have been produced that was omitted." *Claytor*, 61 Ohio St.3d at 241, 574 N.E.2d 472. CARE's statements that it "could have explored" certain "possibilit[ies]" amount to speculation, nothing more, and provide no basis for reversal. Id.; see also, e.g., *Elyria Foundry Co. v. Pub. Util. Comm.*, 114 Ohio St.3d 305, 2007-Ohio-4164, 871 N.E.2d 1176, ¶ 67. Moreover, our review of the record shows that CARE did not raise any complaint regarding the two-week continuance until *after* the hearing. Although this fact suggests that CARE has waived the continuance claim altogether, see, e.g., *Parma*, 86 Ohio St.3d at 148, 712 N.E.2d 724, appellees did not raise such a defense. Nevertheless, the absence of a timely complaint independently suggests that the board gave CARE enough time. Accordingly, we reject CARE's second proposition of law and affirm the board's procedural ruling.

**Arguments First Raised in Reply Are Waived**

**{¶ 35}** CARE argues for the first time in its reply brief that public policy should favor burdening public lands as opposed to acquiring private property. CARE has thus waived this argument. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61.

## Conclusion

**{¶ 36}** For the foregoing reasons, we affirm the order of the Power Siting Board. No evidence shows that it delegated its decisional authority or that the board abused its discretion in conducting the hearing.

Order affirmed.

LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

PFEIFER, J., concurs separately.

BROWN, C.J., not participating.

_____

**PFEIFER, J., concurring.**

**{¶ 37}** I concur in judgment and write separately to express concerns about the priorities of the Ohio Power Siting Board.

**{¶ 38}** The Power Siting Board comprises extremely busy public officials who rely heavily on staff members. I am concerned that the board may not be giving appropriate consideration to aesthetic values.

**{¶ 39}** Geauga County is one of Ohio's most beautiful counties. Forbes Magazine considers Geauga County the fourth-best place to raise a family in America. http://www.forbes.com/2008/06/27/schools-places-family-forbeslife-cx_zg_0630realestate_slide_18.html. According to its own website, Geauga County has "the fourth largest population of Amish in the world," an indication of the value placed on nature by the residents of Geauga County. Geauga County's beauty should not to be taken for granted or needlessly squandered. In reviewing the limited record before us, I find little reason to believe that the Power Siting Board places substantial value on preserving nature or maintaining aesthetics.

**{¶ 40}** As our state grows, more utility resources will be needed and built, whether wind farms, electric lines, natural-gas lines, or some other type of utility facilities. Many factors must be considered when determining the locations of these vital resources. Aesthetics and nature preservation should not necessarily trump other considerations, especially when they are cost-prohibitive. When an economically reasonable alternative is available, however, the impact on nature and aesthetics should be of paramount importance, especially in a place as beautiful as Geauga County. In this case, an apparently reasonable alternative was available, along an existing highway, where the aesthetic impact would have been minimized.

**{¶ 41}** Any utility involved in a siting decision will invariably be better organized and able to devote more resources advocating its preferred route than any group opposing the utility. For instance, in this case, American Transmission submitted a 1,300-page application advocating its preferred route and applied for trade-secret status. The power imbalance between utilities and ordinary Ohioans is another reason for the Power Siting Board to ensure that it carefully considers all relevant factors before reaching its decisions.

**{¶ 42}** I am concerned that hearing officers will continue to follow the path of least resistance, where the line is straightest or cheapest, without giving proper consideration to other values prized by Ohioans. The members of the Power Siting Board should ensure that their staff members are aware of the importance of preserving nature and scenery when considering sites for utility resources, without of course unduly sacrificing economic impact. Our state will need to develop more utility resources while endeavoring to retain its natural beauty. The Power Siting Board must endeavor to achieve both objectives.

_____

Taft, Stettinius & Hollister, L.L.P., Thomas J. Lee, and Julia A. Crocker, for appellant, Citizens Advocating Responsible Energy.

Richard Cordray, Attorney General, and Thomas G. Lindgren, Duane W. Luckey, and Thomas W. McNamee, Assistant Attorneys General, for appellee, Ohio Power Siting Board.

Porter, Wright, Morris & Arthur, L.L.P., Christopher J. Schraff, Robert J. Schmidt, and L. Bradfield Hughes; and Morgan E. Parke, for intervening appellees, American Transmission Systems, Inc., and Cleveland Electric Illuminating Company.

McNees, Wallace & Nurick, L.L.C., Samuel C. Randazzo, Lisa G. McAlister, and Joseph M. Clark, urging affirmance for amicus curiae, Industrial Energy Users – Ohio.

_____