JOURNAL ENTRY AND OPINION
Defendant-appellant Thomas J. Norman ("appellant") appeals from his conviction for aggravated murder with a firearm specification.
Appellant assigns the following errors for review:
 I. THE DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL WAIVED CLOSING ARGUMENT.
 II. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT AT TRIAL WHICH SUBSTANTIALLY PREJUDICED AND MISLED THE JURY.
 III. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN THE COURT ERRED IN FAILING TO IMMEDIATELY STRIKE THE INADMISSIBLE AND UNFAIRLY PREJUDICIAL RESPONSES OF TWO WITNESSES.
 IV. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S MOTION FOR A MISTRIAL AFTER THE PROSECUTION ELICITED TESTIMONY ABOUT ALLEGED DRUG SALES.
 V. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT'S RULE 29 MOTION AS TO THE AGGRAVATED MURDER CHARGE, WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT THE HOMICIDE HAD BEEN PLANNED.
 VI. THE JURY'S DECISION FINDING THE DEFENDANT GUILTY OF AGGRAVATED MURDER WAS NOT SUPPORTED BY SUFFICIENT PROBATIVE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEATH WAS CAUSED PURPOSELY AND WITH PRIOR CALCULATION AND DESIGN.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On June 23, 1998, at approximately 9:00 p.m., appellant and Damon Ware arrived at Esmeralda Drive in Cleveland. Appellant had learned his girlfriend, Lashawna Harris, was visiting a friend, Mary Harris, who lived on that street. Ware parked his automobile at the corner of the street because approximately twenty young men were engaged in playing a game of full-court basketball in the street. Appellant saw Lashawna Harris sitting on the porch of Mary Harris' home. Unable to get his girlfriend's attention, appellant exited the automobile and began walking toward the home.
Appellant's arrival caught the attention of the basketball players. Appellant and the group of young men began looking at one another before exchanging versions of asking who are you looking at. Appellant and one of the participants in the game, Eugene Barker-Bey, engaged in a verbal altercation. Lashawna Harris tried to get between the two young men to avert trouble. At approximately the same time, Damon Ware approached in an effort to calm the situation. Instead, events escalated as one of the neighborhood youths struck Ware. A full-fledged melee ensued when more of the men joined in the fray. Appellant was hit by someone and knocked to the ground where several of the young men struck and kicked appellant.
At that point, appellant withdrew a fully loaded and cocked 9 millimeter handgun from the back of his waistband. Appellant fired the gun as the participants of the fracas fled. No one else at the scene was armed. Apparently, Barker-Bey did not run with the others. Appellant shot Barker-Bey in the face. Barker-Bey began to run toward the Harris home with appellant in pursuit. Barker-Bey ran around to the back of the house where appellant fired his weapon again at the bleeding man. At some point, BarkerBey received a wound to his forearm.
Barker-Bey continued running to the front yard where he tripped over a young woman who also was running in terror from appellant. The two lay on the ground as appellant came into the front yard. Appellant started to walk toward Ware's vehicle when he noticed Barker-Bey move in an effort to get up. Appellant returned to where Barker-Bey lay upon the ground and straddled the nineteen-year old. Appellant stated that he told Barker-Bey he would kill him. Appellant fired three more times into the body of Barker-Bey, striking the victim twice in the back and once in the head. All three wounds would have been fatal. The wound to Barker-Bey's right back was a contact wound, the muzzle imprint clearly marked upon the skin. The wound to the left-side of the victim's back showed stippling, meaning that the muzzle was six and a half to eight inches away at the time the gun was fired. Barker-Bey died at the scene.
The police arrested appellant on June 27, 1998. On July 2, 1998, the grand jury indicted appellant for aggravated murder with a firearm specification. A jury trial commenced on February 3, 1999. The jury found appellant guilty of aggravated murder with a firearm specification. Appellant received a sentence of life plus three years for the firearm specification.
 II.
In his first assignment of error, appellant contends his attorney provided ineffective assistance by waiving closing argument. Appellant argues that closing argument was needed to assist the jury in understanding that appellant committed voluntary manslaughter and not aggravated murder. Appellant asserts that a reasonably competent closing argument by defense counsel may have led to his conviction for voluntary manslaughter and an acquittal on the charge of aggravated murder.
To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1987), 36 Ohio App.3d 162
. Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Statev. Hamblin (1988), 37 Ohio St.3d 153. To establish prejudice, a defendant must show that there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland, supra, at 694.
In State v. Burke (1995), 73 Ohio St.3d 399, the court found that defense counsel waiving closing argument at a mitigation hearing may simply have been a tactical decision and did not show ineffective assistance of counsel. In State v. Robb (2000),88 Ohio St.3d 59, the court noted that closing argument may be waived to prevent the prosecution from presenting a strong rebuttal argument.
In the instant case, appellant argues that the evidence adduced at trial supported a conviction for voluntary manslaughter and not aggravated murder. Appellant contends he was prejudiced by his attorney's decision to forego a last chance to present this argument to the jury.
R.C. 2903.03(A) defines voluntary manslaughter as knowingly causing the death of another while under the influence of a sudden passion or in a sudden fit of rage which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. A jury must find a defendant guilty of voluntary manslaughter rather than aggravated murder or murder if the prosecution proves, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant establishes, by a preponderance of the evidence, the existence of a mitigating circumstance. State v. Rhodes (1992), 63 Ohio St.3d 613, 617.
Appellant testified he was not angry during the shooting but only that he was not thinking. On appeal, appellant contends he may have feared for his life or have been enraged by being physically attacked by a large number of young men. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." State v.Mack (1998), 82 Ohio St.3d 198, 201. Even fear for one's own safety or that of another is insufficient to show sudden passion or fit of rage. See State v. Harris (Aug. 25, 1998), Franklin App. No. 97APA11-1506, unreported. Appellant presented no evidence at trial that he felt any sudden passion or fit of rage during the fight and the subsequent shooting of Eugene Barker-Bey. Further, the trial court instructed the jury on voluntary manslaughter. The jury obviously rejected the notion that appellant acted under a sudden passion or fit of rage. Given the paucity of evidence supporting the mitigating circumstance, there is little likelihood that the outcome of the trial would have been different had defense counsel presented a closing argument to the jury in which the offense of voluntary manslaughter was argued.
Appellant's first assignment of error lacks merit.
 III.
In his second assignment of error, appellant argues that misconduct by the prosecutor deprived appellant of a fair trial. Appellant objects to the prosecutor's cross-examination of defense witnesses Lashawna Harris and Damon Ware. The prosecutor repeatedly asked both witnesses if they were lying while on the stand. Appellant asserts that the questioning, to which no objection was made, prejudiced appellant to such an extent that a new trial is warranted.
A prosecuting attorney's conduct during trial does not constitute a ground for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19,24. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. Statev. Maurer (1984), 15 Ohio St.3d 239, 266.
Controlling the scope of cross-examination lies within the trial court's discretion. State v. Slagle (1992), 65 Ohio St.3d 597,605. When any witness testifies, the credibility of the witness is put directly into issue. State v. Anderson (Aug. 29, 1990), Montgomery App. No. 11703, unreported.
Appellant never raised an objection to the prosecutor's remarks. Any alleged improprieties in the prosecutor's comments were waived absent plain error. See Crim.R. 52(B); State v.White (1998), 82 Ohio St.3d 16. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent the manifest miscarriage of justice. State v.Landrum (1990), 53 Ohio St.3d 107, 111.
On the stand, Lashawna Harris admitted she lied in her police statement and to the police when questioned about appellant. The prosecutor's extensive questioning of Harris' veracity, while excessive, was based upon Harris' actions of lying to the police and in her police statement. Certainly the questioning did not rise to the level of plain error.
The prosecutor's similar questioning of Ware went beyond permissible cross-examination because there was no evidence Ware ever misstated the facts of the case to anyone. However, based upon a review of the evidence admitted below, it is clear that the jury would have convicted appellant even without the misconduct of the prosecutor. See State v. Vrona (1988) 47 Ohio App.3d 145
. No plain error is found in the misconduct of the prosecutor. Appellant received a fair trial.
Appellant's second assignment of error is overruled.
 IV.
In his third assignment of error, appellant states the trial court abridged appellant's right to a fair trial by not immediately striking the responses of two of the prosecution's witnesses. Appellant objects to the response by Mary Harris to the prosecutor's query about what subjects Harris and appellant discussed. Harris stated she bought some "poison" from appellant. Harris then identified "poison" as being drugs. Defense counsel objected when the prosecutor asked if appellant was a drug dealer. Harris did not respond to the question. The trial court sustained the objection out of the presence of the jury. The trial court ruled Harris' answer that she purchased drugs from appellant would be admissible to prove Harris' ability to identify appellant. The trial court did not immediately issue a limiting instruction.
Appellant also asserts that the trial court erred by admitting the testimony of Detective Michael Beaman that he learned appellant's address, date of birth, social security number, and that appellant was wanted for carrying a concealed weapon from the police department computer. The trial court overruled a defense objection. The trial court later stated appellant had opened the door to his history of carrying weapons.
Immediately before closing argument, the trial court issued the following instruction to the jury:
 Let me tell you that I need to further instruct you on two other points. One is you heard testimony from a Detective Beaman that he learned Mr. Norman, the defendant, was wanted for carrying a concealed weapon. This testimony is not to be used by you as substantive evidence that Mr. Norman is guilty of the crime or crimes that he was charged with in this case. It could be usable for other purposes but not for that.
 By the same token, evidence you heard from Mary Harris to the effect that Mr. Norman allegedly sold or gave drugs to her is not evidence to be used to determine whether or not Mr. Norman, whether he is guilty of the crimes in this case.
(Tr. 1022-1023). Jurors are presumed to understand and follow the limiting instructions of the court. State v. Lessin (1993),67 Ohio St.3d 487, 493. The trial court did not give this instruction to the jury until the week after the testimony was elicited. Appellant argues that the delay gave the jury too much time in which to consider the improper testimony, resulting in prejudice to appellant.
In State v. Franklin (1991), 62 Ohio St.3d 118, the defendant argued that a remark made by the trial judge denied him a fair trial because no curative instruction was given until later that day. Because the trial court gave the curative instruction before the jury deliberated, no prejudice resulted to the defendant.
Here, the delay in issuing the instruction to the jury was longer. Even so, appellant has not overcome the presumption that the jury followed this instruction. Further, the trial court never informed the jury in what manner it could consider the evidence, either to show that Mary Harris knew appellant or that he carried weapons. Therefore, the jury's only instruction was to disregard this evidence. Appellant has failed to demonstrate prejudice, particularly in light of the strong evidence of his guilt which was admitted at trial.
Appellant's third assignment of error is not well-taken.
 V.
In his fourth assignment of error, appellant asserts the trial court abused its discretion by failing to grant his motion for mistrial. Appellant made the motion in response to Mary Harris's statement that she bought drugs from appellant. Appellant again argues that the trial court's delay in issuing a curative instruction resulted in prejudice.
The decision to grant or deny a motion for mistrial rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, 182. This is because the trial court is in the best position to determine whether a mistrial is needed. State v. Glover (1988), 35 Ohio St.3d 18, 19. In order to demonstrate that a trial court has abused its discretion in denying a motion for a mistrial, a defendant must show that the trial court's decision was arbitrary, unreasonable, or unconscionable. State v. Nichols (1993), 85 Ohio App.3d 65, 69. A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused are adversely affected. Id. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991), 62 Ohio St.3d 118,127.
Appellant contends that the jury's consideration of him as a drug dealer for the period of time between the testimony in issue and the curative instruction caused unfair prejudice. It was determined in the previous assignment of error that appellant was not prejudiced by the trial court's delay in giving the instruction. Frankly, the evidence hardly was determinative in a case where witness after witness described appellant chasing a wounded man around a house and then returning to where the victim lay on the ground and firing three times into the body at pointblank range, one being a contact wound. Appellant received a fair trial.
Appellant's fourth assignment of error is meritless.
 VI.
In his fifth assignment of error, appellant contends the trial court erred by denying his Crim.R. 29(A) motion for acquittal. Appellant maintains that the evidence admitted regarding the element of prior calculation and design was insufficient to support his conviction for aggravated murder.
A trial court is required to grant a motion for acquittal made pursuant to Crim.R. 29 if the evidence is insufficient to support a conviction for the offense. State v. Pickett (1996), 108 Ohio App.3d 312,314. A trial court shall not grant a Crim.R. 29 motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra.
R.C. 2903.01(A) provides that:
 No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.
Anyone violating this statute is guilty of aggravated murder. R.C. 2903.01(C). "Prior calculation and design" is not defined in the Revised Code. The phrase has been interpreted to require proof of more than the few moments of deliberation permitted in common-law interpretations of the former murder statute. A scheme is required which implements the calculated decision to kill. Instantaneous deliberation is not sufficient. State v. Cotton
(1978), 56 Ohio St.2d 8. However, "neither the degree of care nor the length of time the offender takes to ponder the crime beforehand are critical factors in themselves, but momentary deliberation is insufficient." State v. D'Ambrosio (1993),67 Ohio St.3d 185, 196. Findings of prior calculation and design have been upheld in some short-lived emotional situations. No bright-line test is possible in determining whether prior calculation and design is present in a case. Each case turns on the particular facts and evidence presented at trial. State v.Taylor (1997), 78 Ohio St.3d 15.
In Cotton, supra, the defendant was being pursued by two police officers. Cotton ran after one of the officers he had shot who was crawling on the ground. Cotton assumed a shooting position, held the gun with both hands, and fired a fatal shot down at the officer. The court found that there was sufficient time between the appearance of the officers on the scene and the firing of the last fatal shot to show prior calculation. The manner in which Cotton fired the last gunshot justified a finding of design.
Similarly, in Taylor, supra, the victim attempted to crawl away after having been shot three times. Taylor walked closer to the victim and fired three or four more shots into the victim's back. The Supreme Court of Ohio upheld this court's finding that Taylor's conscious decision to walk over to the victim as he tried to crawl to safety and shooting the helpless victim, more than any other factor, proved Taylor acted with prior calculation and design. Further, in State v. Claytor (1991), 61 Ohio St.3d 234, Claytor pursued a wounded security guard, killing the victim with a gunshot to the face. By the act of stalking his victim, Claytor went beyond the impulse of the moment and committed the murder with prior calculation and design. In State v. Bulgin
(Sept. 2, 1999), Cuyahoga App. No. 74758, unreported, this court found the defendant demonstrated prior calculation and design by returning to his vehicle to retrieve his pistol, hiding the weapon behind his back, and, most of all, shooting the victim a second and third time after the victim collapsed, defenseless, to the street. In State v. Wright (May 20, 1982), Cuyahoga App. No. 43869, unreported, this court stated that the defendant's act of synchronizing his movements with that of the victim by following the victim at a run for the sole purpose of killing the victim had to be considered evidence of prior calculation and design.
In the instant case, a group of neighborhood youths attacked appellant and his friend. Appellant acknowledged that he apparently was the only person who carried a weapon. Once appellant withdrew his firearm from his waistband, the fight ceased as the participants began to flee. At that point, neither appellant nor his friend remained in any danger. Instead of retreating to the automobile, appellant fired, wounding Barker-Bey in the face and elbow. The bleeding victim fled with appellant in pursuit. Appellant chased Barker-Bey to the backyard of the Harris' home, firing his weapon at the unarmed man again. Barker-Bey continued to run, ending up in the front yard where he fell to the ground. Appellant was in the process of leaving when he apparently noticed Barker-Bey move. Appellant returned to where Barker-Bey lay on the ground and straddled the victim. Appellant then stated that he told Barker-Bey he would kill him. Appellant fired three more times. One wound to Barker-Bey's back left an imprint of the muzzle, indicating that appellant pressed the weapon to Barker-Bey's flesh before firing. The other wound to Barker-Bey's back left stippling showing appellant fired his gun from close proximity to his victim. The third shot was to Barker-Bey's head, demonstrating an intent to kill.
When construing these facts in the light most favorable to the prosecution, sufficient evidence was adduced below supporting appellant's conviction for aggravated murder. Appellant's pursuit of an unarmed, wounded victim and his act of returning to where the decedent lay on the ground and firing the fatal shots from pointblank range while stating he intended to kill Barker-Bey is more than sufficient to prove appellant acted with prior calculation and design.
Appellant's fifth assignment of error is meritless.
 VII.
Appellant's sixth assignment of error challenges his conviction as being unsupported by sufficient evidence and as being against the manifest weight of the evidence. The test for sufficiency was set forth in the previous assignment of error. To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, supra, at 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175.
Appellant merely incorporates the arguments made in his fifth assignment of error in support of his sixth assignment of error. For the reasons set forth supra, this court finds appellant's conviction was supported by sufficient evidence and that the jury did not lose its way and create a manifest miscarriage of justice by convicting appellant against the weight of the evidence.
Appellant's sixth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. and ANNE L. KILBANE, J. CONCUR.
 _______________ LEO M. SPELLACY PRESIDING JUDGE