DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted the motions for summary judgment filed by appellees on appellant's claims of a violation of Ohio's expungement statute, invasion of privacy and defamation. For the following reasons, this court affirms the judgment of the trial court.
 {¶ 2} Appellant sets forth nine assignments of error:
 {¶ 3} "1. The trial court erred when it determined as `immaterial' the question of fact as to whether Plaintiff was convicted of impersonating an officer.
 {¶ 4} "2. The trial court erred when it determined that the expungement order signed by Judge Erb was not journalized.
 {¶ 5} "3. The trial court erred when it determined that the expungement order signed by Judge Erb was not valid and enforceable.
 {¶ 6} "4. The trial court erred when it ruled that Plaintiff does not have a claim against any Defendant under R.C. 2935.31 et seq. because Judge Handwork `must have issued the [expungement] order pursuant to his judicial authority.'
 {¶ 7} "5. The trial court erred when it found Defendant Clerk had no liability for failing to seal the record of the CCW charge, despite the existence of a valid and enforceable expungement order.
 {¶ 8} "6. The trial court erred when it found Defendant Village did not have knowledge of either expungement order.
 {¶ 9} "7. The trial court erred when it determined Defendant Village was exempt from Ohio's Privacy Act.
 {¶ 10} "8. The trial court erred when it determined Plaintiff did not have any claim for common law invasion of privacy against Defendant Village.
 {¶ 11} "9. The trial court erred when it determined Plaintiff did not have any claim for common law invasion of privacy against Defendants Newspaper and Editor."
 {¶ 12} The facts relevant to the issues raised on appeal are as follows. Appellant was employed by the village of Elmore as a police officer from October 1969 until April 27, 1970. The record contains a letter dated May 2, 1970, to appellant from the village clerk notifying appellant that his services as deputy policeman were terminated as of April 27, 1970, and an undated memo from an officer with the Elmore Police Department to the Lucas County Sheriff's Office stating appellant was discharged on April 29, 1970.
 {¶ 13} In August 1970, appellant was charged in Sylvania Municipal Court with carrying a concealed weapon (case no. 25224) and impersonating a law enforcement officer (case no. 25225). A court journal entry for the weapon charge indicates appellant entered a not guilty plea and contains a notation that the case was bound over to the grand jury. A criminal docket index sheet confirms appellant entered a not guilty plea to the weapon charge. However, there is no indication in the record that appellant was ever convicted of that charge. As to the impersonating charge, the criminal docket index sheet indicates a "No C." plea was entered. However, the record also contains copies of subpoenas indicating the impersonating case was set for trial on October 23, 1970. Under "remarks" on the criminal docket index sheet is a notation that on October 23, 1970, the case was continued to the call of the prosecutor, along with the notation "Guilty."
 {¶ 14} The next event relevant to this appeal occurred in December 1976, when appellant filed an application for expungement of his conviction on the misdemeanor charge of impersonating a police officer. On March 28, 1977, an order for expungement regarding that charge was signed by Sylvania Municipal Court Judge William Erb. The order referred to appellant's no contest plea and the finding of guilty. The record also contains a copy of an order for expungement regarding the weapon charge signed July 26, 1978, by Lucas County Court of Common Pleas Judge Peter Handwork. That order referred to a journal entry dated December 21, 1970, which stated that no indictment was found against appellant on the charge of carrying a concealed weapon. The order further stated appellant was entitled to expungement of the record of the proceedings pursuant to R.C. 2953.31 — 2953.35.
 {¶ 15} On July 17, 2000, appellee The Press, a newspaper published in Millbury, Ohio, printed an article which discussed the 1970 charges against appellant. The editor of the paper at that time was appellee Kelly Kaczala. At the time the article was published, appellant was employed as chief of police for the village of Walbridge, Ohio, an area served by The Press. Appellees village of Elmore ("village") and the clerk of courts, City of Sylvania Municipal Court, both made information regarding the 1970 charges available in response to public records requests by The Press. Information made available by the village of Elmore consisted of appellant's personnel file, which included two subpoenas on which were written the Sylvania Municipal Court case numbers for the impersonating and weapons charges. The reporter then went to the Sylvania Municipal Court Clerk's Office and was allowed to review the criminal docket index sheet containing information on the charges. The Press published a follow-up article on December 10, 2001.
 {¶ 16} On February 21, 2003, appellant filed a complaint in the trial court against the village of Elmore and the Clerk of Sylvania Municipal Court claiming a violation of R.C. 1347 (the Ohio Privacy Act), invasion of his common law privacy rights, and a violation of the Ohio expungement statutes (R.C. 2953.31 et seq.). The complaint also asserted claims against The Press and Kaczala for common law invasion of privacy and defamation. Appellant claimed an order for expungement regarding the impersonation charge was entered with the clerk in the Sylvania Municipal Court in 1977, and an order for expungement of the concealed weapon charge was entered with the Lucas County Court of Common Pleas in 1978. Appellant further claimed the clerk of Sylvania Municipal Court and the village of Elmore intentionally permitted The Press to have access to sealed records and information that was personal and confidential.
 {¶ 17} On August 19, 2003, the trial court denied a motion to dismiss filed by The Press and Kaczala. A motion for summary judgment was filed by appellees village and clerk on July 14, 2004, and by appellees The Press and Kaczala on July 26, 2004. Appellant filed oppositions to both motions and appellees filed replies. On July 19, 2005, the trial court granted both motions for summary judgment.
 {¶ 18} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C) .
 {¶ 19} In support of his appeal, appellant asserts the trial court overlooked material facts which raise genuine issues as to several of his claims. Appellant's first three assignments of error relate to the charge of impersonating a police officer; for reasons of clarity, we will address appellant's second and third assignments of error before addressing the first.
 {¶ 20} In his second and third assignments of error, appellant asserts the trial court erred by finding that the expungement order from Sylvania Municipal Court was never journalized and therefore not valid and enforceable. In considering whether the expungement statutes were violated by the clerk of the Sylvania Municipal Court, the trial court found there was no evidence in the record that the 1977 order to expunge the impersonating offense was ever journalized. Civ.R. 58(A), effective July 1, 1970, states that "[a] judgment is effective only when entered by the clerk upon the journal." Appellant calls the court's attention to several documents which he claims raise a question of fact as to whether the order was journalized, including a letter from an official with the Ohio Attorney General's office that referred to a copy of the order; a memo from the Lucas County clerk of courts that referred to a certified copy of the expungement order; and a document purported to be written by Sylvania Municipal Clerk of Courts Bonnie Chromik regarding her search for appellant's expungement documents. Upon review, however, we find that none of the documents offered by appellant show that the order was in fact journalized. Accordingly, the trial court properly found that the order expunging the impersonating conviction was not journalized and appellant's second assignment of error is not well-taken.
 {¶ 21} Having determined there was no evidence that the order was journalized, the trial court found that it was therefore not valid and enforceable. In his third assignment of error, appellant asserts the judgment was valid and enforceable regardless of whether it was journalized. Appellant appears to argue the order is valid and enforceable because he relied on its validity. Appellant also attempts to gloss over the absence of a file-stamped and journalized order by citing to some documents in the case file which referred to the order. The documents cited by appellant, set forth above in paragraph 20, do not constitute proof that the order was valid. The issue before the trial court was not whether there were other documents indicating some people believed the order to be valid, or whether appellant relied on the order's validity. The question before the trial court, which it correctly answered in the negative, was whether the expungement order was journalized. Ohio courts have consistently held that a court acts and speaks only through its journal.
"[A] judge speaks as the court only through journalized judgment entries." William Cherry Trust v. Hoffmann (1985),22 Ohio App.3d 100, 103. "[I]n order to be `effective,' a court's judgment, whatever its form may be, must be filed with the trial court clerk for journalization." (Emphasis in original.) Id. at 105. Further, the expungement order at issue in this case is not file-stamped. As this court has held, proper journalization requires "some indication on the document that it was filed with the trial court clerk and, most importantly, when." (Emphasis added.) Hoffmann, supra, at 106. Accordingly, the trial court did not err by finding the impersonating expungement order was not valid and enforceable and appellant's third assignment of error is not well-taken.
 {¶ 22} Appellant's first assignment of error stems from the trial court's findings as discussed above. In this assignment of error, appellant argues the trial court erred by finding that whether he was actually convicted of impersonating an officer was "immaterial" in light of the failure of the Sylvania Municipal Court to journalize the order. As discussed above, the trial court based its finding as to the validity of the expungement order on the fact that the order was never journalized. The determining factor was that the order was not journalized; whether appellant was convicted of impersonating an officer was irrelevant to the issue of the order's validity. Appellant's first assignment of error is not well-taken.
 {¶ 23} In his fourth assignment of error, appellant asserts the trial court erred by finding that he did not have a claim against the village of Elmore and the Sylvania Municipal Court Clerk under R.C. 2935.31 et seq. for failure to honor the seals over his criminal records.
 {¶ 24} As we found above under our discussion of appellant's second assignment of error, the expungement order signed by Judge Erb was not valid because it was never journalized. On that basis, appellant had no cause of action against the village or clerk under R.C. 2953.31 et seq. for failing to seal the record of his two cases or for producing information relating to the conviction for impersonating an officer. When the two orders herein were signed, there were two kinds of expungements in Ohio — judicial and statutory. A judicial expungement could be ordered when a defendant was charged but never convicted of an offense. See City of Pepper Pike v. Doe (1981), 22 Ohio St.2d 374. Once convicted, a defendant's remedy was a statutory expungement as allowed by R.C. 2953.32 for first offenders who applied to the sentencing court. It was not until 1984, approximately seven years after the orders in this case were signed, that a law was enacted providing for the sealing of records in cases which did not result in convictions. See R.C. 2953.51-.55. The expungement order signed by Judge Handwork was enforceable as a "judicially granted" expungement since it related to a charge for which appellant was not convicted. However, because the authority for the concealed weapon expungement was not statutory in nature, appellant could not properly assert a claim under R.C. 2953.31 et seq. based on the clerk's disclosure of documents related to the charge. Since the one order was not journalized and the other was not statutorily granted, appellant had no statutory basis for a claim for violation of his rights under R.C. 2953.31 et seq. Appellant's fourth assignment of error is not well-taken.
 {¶ 25} In his fifth assignment of error, appellant asserts the trial court erred by finding the clerk and village had no liability for failing to seal their records relating to the concealed weapon charge. Appellant claims the clerk "failed to eradicate its docket references to the criminal charges from 1970." The record reflects, however, that the individual who was Clerk of the Sylvania Municipal Court when this action was filed was not in office when the expungement orders were signed more than 25 years earlier and had no knowledge of what may have occurred during that time in connection with the orders. Appellant has not presented any evidence showing misconduct on the part of the present clerk. Further, any claim against the clerk who was in office in 1977 or 1978 abated many years ago and cannot be asserted against the person presently holding that position. Claims against public officers in Ohio are governed by the same two-year statute of limitations that applies to political subdivisions. See R.C. 2744.04; Read v. Fairview Park
(2001), 146 Ohio App. 3d 15. Appellant also claims the village should have removed from his personnel file the subpoenas and any other documents relative to the weapon charge. However, as is discussed more fully below, there is no evidence in the record that the village received notice of the expungement order. Absent evidence of notice, the village cannot be liable for failing to seal or remove records from its files. Based on the foregoing, appellant's fifth assignment of error is not well-taken.
 {¶ 26} In his sixth assignment of error, appellant asserts the trial court erred by finding that the village of Elmore did not have knowledge of either expungement order. Appellant asserts the village had "official records" pertaining to the case in the form of subpoenas issued by the Sylvania Municipal Court to employees of the village. Appellant states that the Clerk of the Lucas County Court of Common Pleas and the Lucas County Sheriff's Office properly sealed their records of the charges. Based on that information, appellant infers the village must have received notice of the expungements and the failure of the village to seal its documents relative to the criminal charges was not because of lack of notice but for "some other reason." Appellant further assumes that if the Sylvania Municipal Court contacted the sheriff's office and the common pleas court it must have also contacted the village of Elmore, which held subpoenas issued relative to the two charges. Appellant has pointed to no such evidence, merely surmising that if the common pleas court and sheriff's office knew of the orders, the village also must have known. Absent evidence the village received copies of the orders or otherwise was made aware of their existence, the village cannot be held to have violated a duty to keep its records sealed. Accordingly, because there is no evidence in the record that the village of Elmore knew of the expungement orders we cannot find that the village had a duty to comply with the orders. Appellant's sixth assignment of error is not well-taken.
 {¶ 27} Appellant's final three assignments of error raise issues relevant to his claims of invasion of privacy brought against the village of Elmore, The Press and Kaczala. In his seventh assignment of error, appellant asserts the trial court erred by finding the village was exempt from the provisions of R.C. Chapter 1347, known as Ohio's Privacy Act.
 {¶ 28} R.C. 1347.10(A)(2) provides as follows:
 {¶ 29} "(A) A person who is harmed by the use of personal information that relates to him and that is maintained in a personal information system may recover damages in civil action from any person who directly and proximately caused the harm by doing any of the following:
 {¶ 30} "* * *
 {¶ 31} "(2) Intentionally using or disclosing the personal information in a manner prohibited by law * * *." (Emphasis added.)
 {¶ 32} However, R.C. 1347.04(A)(1) provides exemptions from the privacy act for "[a]ny state or local agency or part of astate or local agency that performs as its principal function anyactivity relating to the enforcement of criminal laws; * * *." (Emphasis added.)
 {¶ 33} In its decision, the trial court found that the village was exempt because there was no evidence that it intentionally disclosed information protected by an expungement order. This court has thoroughly reviewed the record of proceedings in this case and finds there is no evidence the village was aware of an executed expungement order as to either 1970 case. Further, if the village intentionally disclosed personal information in a manner prohibited by law, the act would be protected by the exemption specified in R.C. 1347.04(A)(1), above. The record reflects that appellant's personnel file was maintained by the village police chief, who kept the file as a part of his duties as the chief law enforcement officer for the village. This file was separate from personnel files for other village employees and it was the chief of police who actually released appellant's file to the media. Because the information was released by an individual who performed as his principal function "activit[ies] relating to the enforcement of the criminal laws," the law enforcement exception in R.C.1347.04(A)(1) applies. Accordingly, appellant's seventh assignment of error is not well-taken.
 {¶ 34} In his eighth assignment of error, appellant asserts the trial court erred by finding he did not have a valid claim against the village for common law invasion of privacy. Pursuant to R.C. 2744.02(A)(1), political subdivisions are entitled to blanket immunity for tort claims unless it is demonstrated that the claim fits within one of the statutorily recognized exceptions set forth in R.C. 2744.02(B). See Cater v. Cleveland
(1988), 83 Ohio St.3d 24, 28. Even if one of the exceptions applies, a political subdivision is entitled to have immunity reinstated if it is able to invoke one of the affirmative defenses set forth in R.C. 2744.03. In its motion for summary judgment, the village claimed immunity under R.C. 2744 and argued that none of the exceptions to immunity set forth in R.C.2744.02(B) applied. The village also argued it had a defense pursuant to R.C. 2744.03(A)(2) as conduct required or authorized by law.
 {¶ 35} Upon consideration of the five enumerated exceptions to immunity, we find that none of them apply to the village in this case. The exceptions set forth in R.C. 2744.02(B)(1) and (3) clearly do not apply as the first refers to negligent operation of motor vehicles and the other to the failure to keep public roads and grounds open, in repair and free of nuisance. Next, R.C. 2744.02(B)(2) removes a political subdivision's immunity in cases where the loss is caused by the "negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." However, the provision of police services is not a proprietary function; it is defined under R.C.2744.01(C)(2)(a) as a governmental function. Also, this exception requires a showing of negligence. In this case, appellant does not allege negligence on the part of the village; in paragraphs 28, 30 and 38 of his complaint, he alleges that the village "intentionally" disclosed personal and confidential information about him to The Press and Kaczala by providing them access to sealed records. The exception set forth in R.C. 2744.02(B)(4) likewise would not apply herein as it also refers to certain losses caused by the "negligence" of employees. Finally, we find that the exception to immunity stated in R.C. 2744.02(B)(5) does not apply to the village. This exception applies "when liability is expressly imposed upon the political subdivision by a section of the Revised Code." However, for the reasons discussed above, neither the Ohio expungement statutes nor the Ohio Privacy Act impose liability on the village in this case. Therefore, they cannot be used to support the exception to immunity set forth in R.C. 2744.02(B)(5). Accordingly, although the immunity provided the village by R.C. 2744.02(A) is potentially subject to the five exceptions discussed above, we find that those exceptions have no application to appellant's claim against the village of Elmore. See Inghram v. City of Sheffield Lake (March 7, 1996), 8th Dist. No. 69302 (finding that immunity applied when no exception was triggered).
 {¶ 36} Appellant also argues the village is not entitled to immunity for release of his records because his claim against the village arises out of his former employment with its police department. In support, appellant cites R.C. 2744.09(B), which states that R.C. Chapter 2744 does not apply to civil actions by an employee against his political subdivision relative to any matter that arises out of their employment relationship. We find, however, that this action did not arise out of an employment relationship between appellant and the village of Elmore. This case arose out of the village's disclosure of several subpoenas issued to village officials 30 years earlier regarding their potential testimony in the two cases against appellant in 1970. This case is not about appellant's employment with the village 35 years ago; it is about the village police chief allowing the media to view the subpoenas in appellant's personnel file three decades after his employment with the village was terminated. Further, this court has held that R.C. 2744.09(B) does not remove an employer's immunity for intentional torts as granted under Chapter 2744. See Terry v. Ottawa County Board of MRDD, et al.,151 Ohio App.3d 234, 2002-Ohio-7299. Based on the foregoing, appellant's eighth assignment of error is not well-taken.
 {¶ 37} In his ninth assignment of error, appellant asserts the trial court erred by determining he did not have a claim for common law invasion of privacy against The Press and Kaczala. Appellant bases his argument on the premise that appellees were subject to valid and enforceable expungement orders. He also argues that the records were not public and were of no legitimate public interest. Appellant claims the newspaper had "ample evidence" the records had been sealed, but published the information anyway. In support of this argument, appellant quotes the July 2000 article which stated "the records at the Lucas County Sheriff's Office have reportedly been sealed."
 {¶ 38} Ohio courts have recognized that the following five elements must be proved to establish a claim for invasion of privacy by publication of private facts: (1) the disclosure was public in nature; (2) the facts disclosed concerned an individual's private life, not his public life; (3) the matter publicized would be highly offensive and objectionable to a reasonable person of ordinary sensibilities; (4) the publication was made intentionally, not negligently and (5) the matter publicized was not of legitimate concern to the public. Early v.The Toledo Blade (1998), 130 Ohio App.3d 302, 342, citingKillilea v. Sears, Roebuck Co. (1985), 27 Ohio App. 3d 163,166-167.
 {¶ 39} First, upon review of the two articles in question, we find that the information published did not concern appellant's private life. The first article was published July 17, 2000, under the headline "New chief once charged for impersonating an officer." It stated in part:
 {¶ 40} "* * * Timothy R. Villa, sworn in as the new police chief in May, was charged in 1970 with impersonating a police officer and carrying a concealed weapon, according to the Sylvania Municipal Court.
 {¶ 41} "Mr. Villa pled no contest to the charge of impersonating an officer and was found guilty, according to the Sylvania Municipal Court. He pled not guilty to the charge of carrying a concealed weapon, and the case was bound over to the Lucas County Grand Jury in September, 1970, according to the Sylvania Municipal Court.
 {¶ 42} "A disposition of the case was not on file in the Lucas County Court of Common Pleas. The records at the Lucas County Sheriff's office have reportedly been sealed."
 {¶ 43} The second article was published December 10, 2001, under the headline "Villa may file suit against Elmore." The article again mentioned that appellant pled no contest to a charge of impersonating an officer and guilty to the concealed weapon charge.
 {¶ 44} The information about which appellant complains clearly related only to his professional life in the area of law enforcement. The two charges brought against appellant in 1970, arose following a dispute between appellant and the village of Elmore over whether his services as a police officer had been terminated. The information was published in 2000, within a few weeks of appellant's being appointed police chief for Walbridge in response to citizens' concern over appellant's past performance in law enforcement. Clearly, the information published related to appellant's public life and was of legitimate concern to the public appellant was then serving as chief of police. In a democratic society, the role of the press as a check against government ineptitude and corruption is vital to the well-being of society as a whole. The right of a free press legally to seek information that is part of a public record is absolute and unqualified. In this case, The Press' articles served to document the very concerns expressed by the citizens of Walbridge over the selection of appellant as their chief of police.
 {¶ 45} Finally, there is no evidence The Press or Kaczala intentionally published information it believed was private. Based on all of the foregoing, we find the trial court did not err by concluding appellant did not have a claim against The Press or Kaczala for common law invasion of privacy, and appellant's ninth assignment of error is not well-taken.
 {¶ 46} On consideration of the foregoing, this court finds that there is no genuine issue of material fact and appellees The Press, Kaczala, the village of Elmore and the Clerk of Sylvania Municipal Court are entitled to judgment as a matter of law. The judgments of the Lucas County Court of Common Pleas are affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J. Singer, P.J., Parish, J., concur.