[Cite as *State v. Hamlett*, 191 Ohio App.3d 397, 2010-Ohio-6605.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| The STATE OF OHIO, | ) | CASE NO.  09 MA 165 |
| APPELLEE, | ) | |
| - V - | ) | OPINION |
| HAMLETT, | ) | |
| APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from
Youngstown Municipal Court,
Case No. 09 CRB 1852.

JUDGMENT:                               Affirmed in Part, Reversed in Part.

APPEARANCES:

Joseph R. Macejko, Youngstown Prosecuting Attorney, and John H. Marsh, Assistant
Prosecuting Attorney, for appellee.

John Ams, for appellant.


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                                    Dated:  December 29, 2010


DeGenaro, J.

{¶ 1}   Defendant-appellant, Leonard Hamlett, appeals the September 1, 2009

judgment of the Youngstown Municipal Court convicting him of one count of violating a

domestic-violence civil-protection order ("CPO"), pursuant to R.C. 2919.27(A)(1), and

one count of aggravated menacing, pursuant to R.C. 2903.21, and sentencing him accordingly. Hamlett argues that because the CPO was not journalized by the court at the time of the alleged offense, it was not valid, and therefore, there is insufficient evidence that he violated a protection order. Hamlett also argues that his conviction for aggravated menacing is against the manifest weight of the evidence.

{¶ 2}   Upon review, Hamlett's argument regarding the CPO is meritorious. There is insufficient evidence supporting his conviction for violating a CPO, as the CPO was not effective on the date of the alleged offense. His conviction for aggravated menacing is not against the manifest weight of the evidence. Accordingly, Hamlett's conviction for violating a protection order is vacated, and his conviction for aggravated menacing is affirmed.

## Facts and Procedural History

{¶ 3}   On July 29, 2009, following a full hearing on the matter, Hamlett and S.H. entered into a consent agreement for a protection order pursuant to R.C. 3113.31(F)(2) in the Mahoning County Court of Common Pleas, Domestic Relations Division. The CPO prohibited Hamlett from "committing acts of abuse or threats of abuse against [S.H.]" and among other things prohibited him from coming within 500 feet of S.H. or having any contact with her. The order was signed by both parties on July 29, 2009, and it appears that Hamlett received a copy at that time. However, it was not journalized until August 5, 2009, as indicated by the time-stamp on the face of the entry.

{¶ 4}   On August 1, 2009, at about 1:30 a.m., S.H. heard tapping on her window. S.H. said that Hamlett was outside the window, called her vulgar names, and threatened

her with physical violence. S.H. testified that she was scared for her life. At the time, S.H. was in her apartment with her young child and boyfriend. S.H. called the police, and when the officer arrived, S.H. told the officer that Hamlett had been at her window harassing her. S.H. gave the officer an ex parte CPO, which the officer testified had expired, and the record is unclear as to the exact date of issue or expiration. In making its case against Hamlett, the state never moved to admit the ex parte CPO into evidence, instead relying solely on the CPO, despite the journalization issue.

{¶ 5} Although S.H. testified that Hamlett had threatened to kill her, the officer never mentioned this in his report. The officer did testify that S.H. said that Hamlett had threatened to cause her physical harm. After taking a statement from S.H., the officer found Hamlett's vehicle parked about 100 yards away from S.H.'s residence. He then waited for Hamlett and arrested him. The officer also testified that he was familiar with Hamlett and had seen Hamlett in the vicinity prior to being called to S.H.'s residence.

{¶ 6} At a bench trial, the trial court found Hamlett guilty of violating a protection order pursuant to R.C. 2919.27(A)(1) and guilty of aggravated menacing pursuant to R.C. 2903.21, both first-degree misdemeanors. The trial court sentenced Hamlett to 180 days in jail on the aggravated menacing and 90 days on the violation of the protection order, sentences to be served consecutively. Hamlett filed a notice of appeal and a motion for a stay pending appeal, which was denied by the trial court but granted by this court with several conditions, including no contact with the victim or her family.

### Validity of a Protection Order That Has Not Been Journalized

{¶ 7} Hamlett asserts the following in his first of two assignments of error:

{¶ 8}  "The trial court erred in finding Appellant guilty of violating a protective order which had not been docketed or journalized at the time of the alleged offense"

{¶ 9}  Although not specifically articulated as such, Hamlett challenges the sufficiency of the evidence for his conviction for violating a protection order.  "A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial."  *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (Cook, J., concurring).  "In reviewing the record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Smith* (1997), 80 Ohio St.3d 89,113, 684 N.E.2d 668, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 10}  Hamlett was convicted of violating a CPO pursuant to R.C. 2919.27(A)(1), which states, "No person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section * * * 3113.31 of the Revised Code."

{¶ 11}  Hamlett asserts that the CPO was not effective on August 1 despite the fact that it was signed by Hamlett and S.H. on July 29 because a valid court judgment requires an indication that it was filed and on what date, and therefore the CPO was invalid until it was journalized on August 5.  The state argues that because Hamlett signed the CPO and had actual notice of its terms on July 29 the CPO was effective on that date.  The state further argues that because the CPO was set to expire five years

from July 29, 2009 this indicates that was the effective date of the CPO. Finally, the state asserts that even if the CPO was not effective on the date of the alleged incident, the ex parte CPO was.

**{¶ 12}** Regarding the ex parte CPO, it was not entered into evidence, and the officer testified that when the victim presented it to him, he noted that it had expired. Thus, that order cannot serve as a basis for Hamlett's conviction for violating a CPO. An ex parte CPO can expire before a CPO is granted. See *McDaniel v. McDaniel*, 10th Dist. No. CA2002-06-054, 2002-Ohio-6111, at ¶ 20.

**{¶ 13}** Thus, the issue before us is whether the CPO was effective on the date the parties had notice of its terms and signed it or when it was journalized. Civ.R. 58(A) provides that a judgment is effective only when entered by the clerk upon the journal. "To journalize a decision means that certain formal requirements have been met, i.e., the decision is reduced to writing, signed by a judge, and filed with the clerk so that it may become a part of the permanent record of the court." *San Filipo v. San Filipo* (1991), 81 Ohio App.3d 111, 112, 610 N.E.2d 493. The time-stamp on the date of an entry is proof of journalization. See *Hrina v. Segall* (June 6, 2001), 7th Dist. No. 00 C.A. 87. It is well established that a "court of record speaks only through its journal and not by oral pronouncement * * *." *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, at paragraph one of the syllabus. This is because it is "not inconceivable that the judge * * * might change his mind between the time of announcing a decision and the filing of a judgment entry. This underscores the purpose of Civ.R. 58 and case law sustaining the rule." *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St.3d 80, 83,

523 N.E.2d 851.

{¶ 14} For example, in *Villa v. Elmore,* 6th Dist. No. L-05-1058, 2005-Ohio-6649, a former police officer was convicted of impersonating an officer and carrying a concealed weapon and six years later filed an application for expungement, to which he was entitled. Id. at ¶ 13-14. Years later, a local newspaper published an article about Villa's criminal charges, which resulted in Villa's initiating litigation asserting, among other things, violation of Ohio's expungement statutes. Id. at ¶ 15-16. The court held that there was no violation of the expungement statutes because there was no evidence that the expungement order had been journalized. Id. at ¶ 21.

{¶ 15} Nonetheless, the state contends that because the CPO was set to expire five years to the day from July 29, 2009, the true, intended effective date of the CPO is clear. This argument lacks merit because there is no requirement that the CPO be effective for the maximum five-year period. See R.C. 3113.31(E)(3)(a). Indeed, paragraph 21 of the CPO states that it shall remain in effect "for a period of five years from issuance, *or* until July 29, 2014." (Emphasis added.)

{¶ 16} At oral argument, the state argued for the first time that because this case involves a consent agreement, the CPO became effective prior to journalization. In support of this contention, the state focuses on the language of the criminal statute, which prohibits a person from recklessly violating the terms of "[a] protection order issued *or consent agreement approved* pursuant to section * * * 3113.31 of the Revised Code." (Emphasis added.) R.C. 2919.27(A)(1). The state argues that the legislature's use of the word "approved" with regard to consent agreements creates an exception to

the established principle that a judgment becomes effective only when journalized by the clerk pursuant to Civ.R. 58. Rather, the state contends that the consent agreement became effective when signed by both parties and approved by the magistrate at the conclusion of the hearing on July 29, 2009. We disagree.

{¶ 17} In *Stickel v. Pryor*, 2d Dist. No. 01CA-43, 2002-Ohio-3309, the Second District Court of Appeals explored the issue of when a consent-agreement CPO pursuant to R.C. 3113.31 becomes effective. In *Stickel*, the appellant argued that the consent agreement was void because it lacked an express effective date. The court disagreed, explaining:

{¶ 18} "The consent agreement was obtained before the magistrate and submitted to the court as the magistrate's decision on the matter referred. The court adopted the magistrate's decision as the court's interim order on the same date. It became effective that date. Civ.R. 53(E)(4)(a),(c). Objections would have automatically stayed execution of the relief granted, but none were filed within the fourteen days provided. *Therefore, the order was fully effective from the date the court signed and filed it*, July 10, 2001." (Emphasis added.) *Stickel,* 2002-Ohio-3309, at ¶ 12.

{¶ 19} Thus, this holding defeats the state's argument that the consent-agreement CPO was effective at the time the parties and the magistrate signed it. Rather, the CPO was not approved by the court and journalized until August 5 and was thus not effective until that date, which is after the date of the alleged offense. Hamlett's first assignment of error is meritorious.

**Manifest Weight**

{¶ 20} In his second assignment of error, Hamlett asserts:

{¶ 21} "Appellant's convictions are against the manifest weight of the evidence."

{¶ 22} Hamlett challenges both of his convictions as being against the manifest weight of the evidence. Because we have found Hamlett's first assignment of error meritorious, we are left to review the aggravated-menacing conviction.

{¶ 23} Weight of the evidence concerns the greater amount of credible evidence to support one side of an issue over the other. *Thompkins,* 78 Ohio St.3d at 387. In reviewing a manifest-weight-of-the-evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.

{¶ 24} A conviction should be reversed as against the manifest weight of the evidence only under exceptional circumstances. Id. This is so because the fact-finder is in a better position to determine credibility issues because he or she personally viewed the demeanor, voice inflections, and gestures of the witnesses. *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068; *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.

{¶ 25} Ohio's aggravated-menacing statute, R.C. 2903.21(A), states that no "person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person."

{¶ 26} Hamlett challenges the credibility of S.H.'s testimony that she believed

Hamlett would cause her serious physical harm, asserting that her testimony was vague. He also points out that there was conflicting testimony between S.H. and the officer as to the threats of physical violence, and thus the trial court lost its way.

{¶ 27} Under direct examination, S.H. testified that Hamlett was "calling [her] b**** and all kind of stuff, threatening [her] and said he was going to kill [her] and do all these things." When asked for more specifics, she again said, "[He threatened] all this stuff, saying he is going to do this, kill me and all kinds of stuff, threatening me, all kinds of things." The officer testified that S.H. stated that Hamlett had threatened to cause her physical harm, but could not testify as to how. Both S.H.'s and the officer's testimony indicated that Hamlett was in the area. Their testimony is not unreasonable, and it is not patently apparent that the trial court lost its way. Mere vagueness does not necessarily rise to the level of conflicting testimony. The trial court was in the best position to see and hear witness testimony and decide what was credible and what was not. Thus, Hamlett's second assignment of error stating that his aggravated-menacing conviction is against the manifest weight of the evidence is meritless.

{¶ 28} In conclusion, the effective date of the CPO was not July 29, the date it was signed by the parties, but August 5, 2009, the date it was journalized. Thus, there was insufficient evidence to support his conviction for violating a CPO on August 1, 2009, the date of the incident. However, Hamlett's conviction for aggravated menacing was not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is affirmed in part and reversed in part, and Hamlett's conviction for violating a protection order is vacated.

Judgment affirmed in part,

reversed in part,

and vacated in part.

DONOFRIO and WAITE, JJ., concur.